UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| BLACK HILLS TRUCK & TRAILER, INC., <br><br> Plaintiff, <br><br> vs. <br><br> MAC TRAILER MANUFACTURING, INC., and SIOUXLAND TRAILER SALES, INC., <br><br> Defendants. | Case No. 13-cv-4113 (KES) <br><br> ORDER DENYING DEFENDANTS' JOINT MOTION TO EXCLUDE EXPERT TESTIMONY |

Defendant MAC Trailer Manufacturing, Inc. moves to exclude the expert testimony of Wayne R. Brown, A.S.A., M.B.A. Defendant Siouxland Trailer Sales, Inc. joins the motion of MAC. Plaintiff, Black Hills Truck & Trailer, a wholly-owned subsidiary of North American Truck & Trailer, Inc., opposes the motion. For the following reasons, Siouxland's motion for joinder is granted, and MAC and Siouxland's motion to exclude expert testimony is denied.

**FACTUAL BACKGROUND**

Black Hills filed a lawsuit against MAC and Siouxland alleging multiple causes of action, including breach of contract, breach of good faith and fair dealing, and tortious interference with a business relationship. Docket 46. MAC had entered into a written distributor agreement with Black Hills on

September 26, 2012, granting Black Hills the right to franchise and distribute MAC product throughout western South Dakota and parts of Nebraska. Docket 67-6. A new contract term would renew yearly on January 1, unless either party modified or non-renewed the current agreement. *Id.*

On or around June 3, 2013, MAC sent proposed distributor agreement modifications to Black Hills' Vice President, Mike Rush. Docket 67-10. On June 24, 2013, MAC sent Black Hills an email stating that MAC would not accept any orders placed by Black Hills until the new agreement was signed. Docket 67-11. On July 2, 2013, Black Hills sent its own proposed modifications to MAC, including the right to sell *all* MAC products instead of the two trailer types (dumps and flatbeds) authorized under the existing agreement. Docket 67-14 at 5 (emphasis added). This letter also stated Black Hills' intention to file a civil lawsuit in South Dakota against MAC if the new terms were not met. *Id.*

Black Hills alleges that the June 24, 2013 email is a wrongful termination of the distributor agreement, and that Black Hills incurred damages it otherwise would not have but for MAC's non-renewal of the agreement. Docket 100 at 2. It is in dispute whether the agreement was terminated within the first nine-months of contract, or non-renewed after fifteen months on December 31, 2013. *Id.* Regardless, Black Hills states it only sold MAC trailers for nine months. *Id.* at 2 n.2. Black Hills retained Wayne R. Brown to provide expert testimony on his assessment of Black Hills' lost profits and provided MAC and Siouxland with Brown's supplemental expert report. Docket 86-3. In reaching his ultimate conclusion, Brown considered multiple

2

sources of data and information, and included that which he assessed to be relevant. Docket 100 at 2.

## LEGAL STANDARD

The admissibility of expert testimony is governed by Federal Rule of Evidence 702, which requires expert testimony to be "scientific, technical, or other specialized knowledge" that will clarify the trier of fact's understanding of the evidence or determination of a fact in issue. *See, e.g.*, *Tamara Star Comes Out v. Ahsan*, No. Civ. 05-5075, 2008 WL 2675106, at *2 (D.S.D. Apr. 22, 2008). Under Rule 702, an expert may testify if (in relevant part): "the testimony is based on sufficient facts or data[,] . . . the product of reliable principles and methods[,]" and if "the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

The decision to permit or exclude expert testimony lies within the discretion of the trial court, and is the standard set by the United States Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Under *Daubert*, trial judges are given the "responsibility of acting as gatekeepers to exclude unreliable expert testimony[.]" Fed. R. Evid. 702, Comment to 2000 Amendments. By acting in this "gatekeeper" role, the court must find that all submitted expert testimony be properly grounded, well-reasoned, and not mere speculation before it can be admitted to trial. *See Daubert*, 509 U.S. at 592 (finding that an expert's knowledge must be more than mere "subjective belief or unsupported speculation"). The Court stated that the party offering expert testimony must establish that the opinion is

"supported by appropriate validation … based on what is known," but still acknowledged that it is "unreasonable" to require the opinion be "known to a certainty." *Id.* at 590.

Despite the court's wide discretion in determining an expert's admissibility under *Daubert*—in the case of factual ambiguity—the expert is less likely to be excluded if the question of reliability would be better challenged on cross-examination. *See, e.g., id.* at 595 (finding that "vigorous cross-examination [and] presentation of contrary evidence . . . are the traditional and appropriate means of attacking shaky but admissible evidence."). In other words, a challenge under *Daubert* does not often result in the exclusion of experts because of factual flaws made in their opinion when their testimony would be probative to the jury and the issues in dispute can otherwise and expectedly be uncovered during trial. *Id.*

For the following reasons, the court finds that Black Hills has fulfilled its burden to proffer evidence regarding the admissibility of Brown's expert testimony through evidence that is sufficient to meet the standard set by Rule 702 and *Daubert*, and that MAC and Siouxland's objections would be better addressed on cross-examination.

## DISCUSSION

Before moving forward, it is important and efficient to broadly address a few points that MAC and Siouxland have made regarding Brown. First, neither defendant objects to Brown's credentials or qualifications as an Accredited Senior Appraiser. Docket 85 at 5. Second, MAC and Siouxland's main

4

objections to Brown's reliability as an expert stem from the allegations that his opinions "drastically overstated" Black Hills' lost profits by using numerically inaccurate data. *Id.* at 12.

While the defendants urge the court to exclude Brown's testimony due to the alleged inaccuracy of the numbers and data used in calculating damages, the correctness of these figures is a question of fact, not law. Further, Brown specifically stated reasons for his estimations, so defense can challenge these deliberate choices on cross-examination. *See* Docket 93-5 at 10 (where Brown explained his 'overestimations' by stating that "[Black Hills'] historical sales of MAC trailers underrepresent the strong traction [Black Hills] had achieved with MAC customers.") Most challenges made by MAC and Siouxland intertwine Brown's methodology with the data applied to his method, so this order will attempt, with all due diligence, to separate the two so as only to comment on the reliability of the formula and methodology used, and not the conclusions generated by the factual data. *See Daubert,* 509 U.S. at 595 (finding that the court must focus only on the "principles and methodology" of the expert's testimony, "not on the conclusions that they generate").

Relevant sources of this data must, however, be addressed by the court to some extent, but ultimately it is for the jury to determine whether the numbers Brown used are correct. It is this court's duty only to evaluate whether Black Hills has laid the foundation for admissibility, which will be determined through the examination of Brown's methodology and his

testimony's ability to assist the trier of fact in understanding the complex nature of future profit-loss estimation.

I. **Brown's Proposed Expert Testimony is Based on Proper Methodology Commonly Seen in Calculating Lost-Profits.**

MAC and Siouxland argue that Brown's testimony should be excluded because his opinions are not sufficiently based in factual support to meet the high burden of admissibility. *See, e.g.*, Docket 85; *see also Mostly Media, Inc. v. U.S. West Commc'ns*, 186 F.3d 864, 867 (8th Cir. 1999) (finding the plaintiff's burden of proof "in a lost-profits case is admittedly heavy"). There are three broad arguments made by MAC and Siouxland under their main contention surrounding Brown's use of insufficient facts and unreliable data. Docket 85 at 5. MAC and Siouxland challenge 1) "Brown's application of the wrong measure of damages," 2) "his blind trust in the representations made" by Black Hills, and 3) "his total disregard of certain facts" unfavorable to Black Hills' lost profits assessment. *Id.* All three of these arguments make up "an attack on the methodologies Brown employed." *Id.*

A. **Brown projected lost profits by properly calculating and applying damages through a methodical procedure accepted by both the legal and industrial fields.**

MAC and Siouxland's first attack is on "Brown's application of the wrong measure of damages[.]" Defendants begin by contending that Black Hills' burden for proffering lost profits is higher than usual based on the limited time Black Hills was a MAC dealer. *Id.* at 6 (stating that Black Hills' "MAC-related business line was new."). There is, however, an important distinction between a

6

*business* being considered new and a new business *line*. The Eighth Circuit recognizes an increased standard for calculating reliable lost-profits when the former has recently been established, but only imposes this heavy burden after examining the distinctive facts of each case. *See, e.g.*, *Tipton v. Mill Creek Gravel, Inc.*, 373 F.3d 913, 918 (8th Cir. 2004) (stating that the plaintiff's burden in a lost profits case is even greater when a business has only existed for a short amount of time, and that the exorbitant amount of assessed lost profits was merely "wishful thinking"); *see also Tyus v. Urban Search Mgmt.*, 102 F.3d 256 (7th Cir. 1996) (finding that not all specific factors presented in each case can apply to every type of expert testimony).

Here, given the specific circumstances of this case, the court does not consider Black Hills to be "new" to the business of selling and servicing trailers, even though Black Hills had just recently acquired the distributor agreement with MAC. Black Hills is well-established in the market, and thus significantly more stable in both operation and income than it would be if the agreement with MAC had been its first or only distributorship. *See, e.g.*, Docket 88-1 at 17 ("[Black Hills] know[s] what the business is, they know what the market is.").

In *Diesel Machinery, Inc. v. B.R. Lee Industries, Inc.*, 418 F.3d 820, 837 (8th Cir. 2005), the Eighth Circuit Court of Appeals found that the use of a ten-year projection period to determine lost profits incurred due to the unlawful termination of an exclusive dealership agreement, after a limited eight-month agreement period, was proper. Thus, Brown's opinion that "ten years is a very acceptable time period" is not inappropriate.

MAC and Siouxland also challenge the data employed by Brown in "forecast[ing]" his total calculation of Black Hills' lost profits over this ten-year period. Docket 85 at 7. Detailed in MAC's brief are numerous objections made to factually contradict the specific data amounts outlined in Brown's report. *See* Docket 85; *see also* Docket 113. These factual objections will be better addressed during cross-examination of Brown, and left to the jury to allocate credibility and weight.

MAC contends that Brown's estimate of the number of future trailer sales is "pure speculation" and that "any opinions" made in reliance on these figures are therefore inadmissible. Docket 85 at 10; *see, e.g.*, *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 757 (8th Cir. 2006) ("Expert testimony is inadmissible if it is speculative, unsupported by sufficient facts, or contrary to the facts of the case."). "When the analytical gap between the data and proffered opinion is too great, the opinion must be excluded." *Marmo*, 457 F.3d at 758.

Here, MAC's objection is not with the formula Brown used to calculate lost profits, but rather the original data applied to the formula. After careful consideration of the data used by Brown to calculate lost profits, the court finds there is some support in the record for the data he applied to the formula, and the "analytical gap" between the data and Brown's ultimate conclusion is not *too* great. Because it is impossible to create a projected forecast without some degree of speculation, *Daubert*, 509 U.S. at 590, any factual objections are better left to the jury to determine.

**B. Brown correctly relied on the assertions made by Black Hills that had first-hand knowledge and experience regarding Black Hills' cost structure and earning potential.**

Second, MAC and Siouxland argue that these estimations were formed purely on the basis of assertions made by Black Hills, without Brown independently investigating further to validate the projection representations. Docket 85 at 6 (contending that Brown collected data through "blindly accept[ing]" assertions made by Black Hills' officials and employees). Black Hills relies upon an Eighth Circuit case that exhibits analogous facts to the current dispute, including wrongful termination, an award of lost profits estimated over a ten-year period, and defendant's contention that plaintiff "was 'seriously overstat[ing]' its damages and prospects of success." *Diesel*, 418 F.3d at 829. Black Hills' reliance centers on the Eighth Circuit's affirmation that the business owner could testify to the company's "prospects of success" due to his extensive knowledge within the industry. Docket 100 at 9 ("[T]he business owner's expectations and anticipations of the terminated product line are essential to a thorough and reliable analysis.").

Siouxland argues in its reply that the "testimony at issue" in *Diesel* "was that of the plaintiff himself, not an expert." Docket 114 at 1. The important point of the *Diesel* opinion is the Eighth Circuit's conclusion that the business owner had the requisite knowledge to estimate the plaintiff company's earning potential and consequent lost profits. *Diesel*, 418 F.3d at 837 (affirming the owner's "experience in the business provided the foundation for all the specifics to which he testified").

It can further be reasoned that, if a court found a business owner's experience to be reliable enough to withstand the level of scrutiny in trial, Brown could reasonably rely on Black Hills' assertions of its own cost structure and earning potential. Docket 109-1 at 2 ("In order to determine the amount of avoided costs, the [expert] needs to understand the plaintiff's cost structure.").

Here, the more specific question is whether Brown *solely* relied upon Black Hills, disregarding all other factors relevant in calculating his estimate. Docket 100 at 9 ("Brown cross-referenced [Black Hills'] information with external or third-party sources *whenever such sources were available.*"). There is no dispute that Brown relied upon Black Hills to some extent in establishing projections that he could apply to his formula for measuring damages, Docket 113 at 6 ("[I]t cannot be disputed that [Black Hills] did not provide Brown with any actual projections."), but it is reasonable to assume that there are very few external sources available regarding private business sales forecasts and expectations. *See, e.g.,* Docket 109-1 at 2 (finding a significant variance regarding "the degree of detail contained in the plaintiff's accounting records regarding costs" and that "different degrees of specificity may be required in estimating the extent of avoided costs").

Rule 702 asks whether the expert is relying on a *sufficient* basis of information when reaching an opinion, and Black Hills, like the business owner in *Diesel*, certainly is in the best position to provide Brown with the information he needs to start his analysis. Fed. R. Evid. 702. The court finds that Brown properly relied upon the assertions and expectations made by

Black Hills when creating his lost profits projection because Black Hills officials had sufficient and reliable first-hand knowledge of the company, and the information was not reasonably available through third-party or external sources. The mere disagreement regarding the reliability and accuracy of the numbers provided is a matter for the jury to determine. Any and all challenges the defense may have to these numbers should be properly brought during cross-examination; it is this court's conclusion that the source of the information—Black Hills—was reasonably relied upon.

### C. Brown properly followed a formula similar to that accepted by courts in *Diesel, Buono Sales,* and *Groseth, Inc.* when reaching his total calculation of lost profits.

Finally, MAC and Siouxland's last challenge to Brown's methodology is his alleged purposeful data omissions that result in Brown reaching an inaccurate calculation of lost profits, thus making his methodology and formula "utterly unreliable[.]" Docket 85 at 11. In *Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039, 1056 (8th Cir. 2000), the court found a proper objection to the admissibility where the expert's damage assessment was "not grounded in . . . economic reality" and "ignored inconvenient evidence."

MAC reasons that the calculated lost profits reflect Black Hills' gross profits rather than net profits because Brown only included the cost of the trailers and employee sales commissions as mitigating variable expenses. In *Groseth International, Inc. v. Tenneco Inc.*, 440 N.W.2d 276 (S.D. 1989), the South Dakota Supreme Court found that damages are properly found when the

11

"amount of net profits . . . plus the amount of fixed future overhead expenses" are measured, *rev'd on other grounds*, *Tibke v. McDougall*, 479 N.W.2d 898 (S.D. 1992). In reaching this conclusion, the South Dakota Supreme Court relied almost exclusively on the Third Circuit's approach regarding lost profit measures in *Buono Sales, Inc. v. Chrysler Motors Corp.*, 449 F.2d 715 (3d Cir. 1971). *Groseth*, 440 N.W.2d at 278 (concurring "with the parties that the proper measure of damages for loss of profits is set forth in *Buono Sales* . . . .").

The facts in *Buono Sales* are analogous to those in the current case, namely a breach of contract claim arising between a manufacturer and a dealer. *Buono Sales*, 449 F.2d at 716. The expert in *Buono Sales*, a certified public accountant, arrived at his estimate by subtracting "from gross profits certain variable expenses which he believed to be directly related" to Chrysler's product at the center of the breach. *Id.* at 718. The court found this to be proper given the facts of the case. *Id.* (finding that sales compensation and commissions were included in variable expenses and "deemed to be directly allocable" to the sale of the product). Additionally, the court held that "where the plaintiff's overhead or fixed expenses are not affected by the defendant's breach, no deduction should be made in calculating the profits which the plaintiff would have made had it not been for the breach." *Id.* at 719-20.

Here, MAC argues that, under *Groseth*, Brown's formula should be rejected because he only included the cost of the trailers and employee sale commissions as mitigating variable expenses. Docket 85 at 11-12. This court finds that Brown's formula substantially follows that accepted by *Buono Sales*,

12

and thus *Groseth* by extension. *Groseth*, 440 N.W.2d at 278. Brown did not include employee salaries for additional service technicians and/or mechanics—a decision Siouxland has explicitly taken issue with—due to their relevance to the *entire* Black Hills business, not just the distributor agreement with MAC. When the agreement ended in 2013—regardless of if it was done lawfully—Black Hills still assumedly had service technicians and mechanics on salary to service other manufacturers' product lines. Brown deducted the commissions because they were tied directly to the sale of MAC trailers and were a cost that would be directly allocable to the sale of MAC product. While MAC and Siouxland may challenge the extent of the data Brown included as 'variable expenses' during cross-examination, this does not convert his opinion into one that is based on gross profits rather than net profits. It is the jury's role to determine the weight to be given to Brown's opinion.

Second, both MAC and Siouxland take great issue with Brown's exclusion of a twelve percent federal excise tax because its inclusion "would cut significantly into the profits [Black Hills] would have obtained." Docket 85 at 12 ("Brown ignored federal excise taxes. Every trailer sale incurs a tax of 12 percent of the sales price . . . ."). MAC argues that the omission of this "undoubtedly avoided" cost renders Brown's entire testimony inadmissible, especially with its potential to mislead the jury. Docket 113 at 8-9 ("For [Black Hills] . . . to argue that federal excise taxes should not be considered . . . is truly incredible, though perhaps a perfect example of why the Court must exercise its gatekeeping function here to prevent Brown's junk science from

13

misleading the jury."). Neither MAC nor Siouxland, however, cite a single case where an expert witness's opinion regarding net profit loss took into consideration a reduction based on a 12% federal excise tax. The court will not exclude Brown's testimony on this basis.

The final datum that MAC and Siouxland contend was improperly omitted from Brown's analysis was Black Hills' overhead charges. Docket 85 at 13 ("Brown also ignored overhead entirely."). Brown testified to his reasoning for not deducting overhead costs from the total damages calculation in his deposition: "If [Black Hills] would have any material increase (of overhead) that would be variable . . . because of the sales of MAC trailers . . . not just the general business, but actually related to that revenue, then those could be included. But my understanding is that there aren't any, there wouldn't be any." Docket 86-6 at 16.

The South Dakota Supreme Court held that a jury is "not to award the costs of fixed future overhead costs which . . . can [be] avoid[ed] by cutting costs or can apply to some other profitable use." *Groseth*, 440 N.W.2d at 278. *Groseth* followed the Third Circuit's interpretation in *Buono Sales*, 449 F.2d at 719, agreeing that "no offset should be made against gross profits because the breach did not relieve plaintiff of such expenses[.]" The Third Circuit also found the expert's testimony sufficiently reasoned why overhead charges were not included as "variable costs" in his report, thus finding his methodology reliable. *Id.* at 719-20 (finding that a business is "entitled to damages if the breach

deprives it of additional revenue which it could have used to help defray its overhead expenses.").

Here, Brown omitted overhead in his calculation of variable/avoided costs, but he also did not include overhead expenses as money Black Hills is entitled to recover in his damages report. He testified that Black Hills represented that it has a fixed overhead that would not be lowered, nor affected, by the loss of its MAC product line. *See* Docket 86-6 at 3. For this reason, it follows that Brown did not find overhead to be a cost that needed to be included—either by subtracting from or adding to Black Hills' profits—as it was fixed within the company regardless of whether or not Black Hills was licensed to sell MAC trailers. *See Groseth*, 440 N.W.2d at 278 (finding the correct measure of damages is the amount of net profits "plus the amount of fixed future overhead expenses which . . . cannot be avoided by cutting costs or [applying] to some other profitable use.") (emphasis omitted).

Legally, all that is required to ensure proper methodology is the utilization of the correct precedential formula, *i.e.*, subtracting variable expenses from gross profits. *Groseth*, 440 N.W.2d at 277-78. Because that is the methodology used, this court finds that his methodology is reliably sufficient, and thus admissible as governed by Rule 702.

II. **Brown's Testimony is Probative to Assist the Jury in Understanding Plaintiff's Potential Lost Profits.**

Regardless of the court's finding that Brown's testimony is admissible purely on his credentials and methodology, Federal Rules of Evidence 403 and 703 assign the court wide discretion in determining whether to include or

exclude expert testimony. Under Rule 703, an expert's testimony may be disclosed to the jury—even "if the facts or data would be otherwise inadmissible"—if the opinion's "probative value in helping the jury evaluate the opinion substantially outweighs [its] prejudicial effect." Fed. R. Evid. 703. Rule 403 states, in relevant part, that evidence may be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice . . . [or] misleading the jury[.]" Fed. R. Evid. 403.

MAC and Siouxland contend that Brown's testimony will not assist the jury due to the "plethora" of flaws they allege are present in his report. Docket 85 at 1-2. The fact that speculation is present does not always rise to the level of inadmissibility. While some courts have excluded testimony found to be too steeped in speculative calculations to be helpful to the jury, the court does not find that to be the case here with Brown's opinion. Under Rules 403, 702, and 703, the court finds that, unless extenuating circumstances of unreliability are present, expert testimony should be admitted to be weighed by a jury. *See Lauzon v. Senco Prods., Inc.*, 270 F.3d 681, 686 (8th Cir. 2001) (stating that Rule 702 clearly is one of admissibility rather than exclusion).

In weighing the admittance of Brown's testimony in light of these Rules, the court finds that the benefit to the jury is far more probative than it is prejudicial. The jury is unlikely to be as knowledgeable in the field of profit evaluation as Brown is, and thus less likely to understand the facts of the case in the manner required to reach an informed and justified verdict. All parties became understandably confused when deposing Brown about the nuances of

lost profits, so it can be reasonably assumed that the average layperson will be just as, if not more, confused during trial. *See* Docket 86-6; *see also* Docket 88-1. Because there are many issues of fact challenged by MAC and Siouxland, it will be probative for the jury to hear each side's posited opinions and the respective challenges during cross-examination. *Daubert*, 509 U.S. at 595 (finding that "vigorous cross-examination [and] presentation of contrary evidence . . . are the traditional and appropriate means of attacking shaky but admissible evidence").

## CONCLUSION

Under the facts of this case, the court finds that Black Hills has fulfilled its burden to proffer evidence regarding the admissibility of Brown's expert testimony through evidence that is sufficient to meet the standard set by Rule 702 and *Daubert*.

Thus, it is

ORDERED that defendants' joint motions (Dockets 84 and 88) to exclude expert testimony of Wayne Brown are denied.

Dated July 10th, 2017.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE