UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| BLACK HILLS TRUCK & TRAILER, INC., <br><br> Plaintiff, <br><br> vs. <br><br> MAC TRAILER MANUFACTURING, INC., and SIOUXLAND TRAILER SALES, INC., <br><br> Defendants. | Case No. 13-CV-4113 (KES) <br><br> ORDER GRANTING SUMMARY JUDGMENT IN PART AND DENYING IN PART AND DENYING MOTION TO AMEND |

Plaintiff, Black Hills Truck & Trailer, brought this action naming MAC Trailer Manufacturing, Inc. and Siouxland Trailer Sales, Inc., as defendants. Black Hills alleges a violation of SDCL § 32-6B-45, a violation of the Robinson-Patman Act, breach of contract, breach of good faith and fair dealing, and deceit against MAC. Docket 46. MAC moves for summary judgment on all claims with Siouxland joining in the motion. Docket 90; Docket 99. And Black Hills filed a cross motion for partial summary judgment on its claim for a violation of SDCL § 32-6B-45. Docket 94. MAC also moves to amend its answer. Docket 122.

**FACTUAL BACKGROUND**

The undisputed facts are:

Black Hills is a truck and trailer dealership located in Rapid City, South Dakota. Black Hills is a subsidiary of North American Truck & Trailer, Inc.,

(NATT), which is owned by the Rush family in Sioux Falls, South Dakota. NATT has dealer or service locations in various cities[1] across South Dakota, Nebraska, and Iowa. MAC is a trailer manufacturer with distribution agreements covering seventy-five percent of the states in the United States. Mike Conny is the owner, CEO, and President of MAC. Siouxland is located in Sioux City, Iowa, and sells trailers from four different manufacturers including MAC. Gary March is the owner of Siouxland.

Siouxland and MAC entered into a Distributor Selling Agreement (dealer agreement) on November 22, 2010. Docket 98-2. The dealer agreement provided Siouxland with an Area of Responsibility (AOR) of the western two-thirds of Iowa and did not make any reference to an AOR in South Dakota or Nebraska. *Id.* Black Hills and MAC entered into a dealer agreement on September 26, 2012, that provided Black Hills with an AOR including seven South Dakota counties, twelve Nebraska counties, and a dealer location in Rapid City. Docket 93-1. On December 26, 2012, March sent an email to Steve Hallas, Vice President of Sales for MAC Trailer Manufacturing, expressing his displeasure with MAC's decision to set up Bill Rush, President of NATT, with a dealership and stated, "If I see he has taken us out of one deal I will find a new supplier [sic] Do not take this as a threat it is a promise." Docket 98-3. On January 9, 2013, March sent another email to Hallas informing Hallas that the

---

[1] Sioux Falls, South Dakota; Rapid City, South Dakota; Watertown, South Dakota; Omaha, Nebraska; Sioux City, Iowa; Lexington, Nebraska; Tekamah, Nebraska; West Point, Nebraska; and Commerce City, Colorado.

Rush family was suing another manufacturer and provided Hallas with contact information for a person at that manufacturer. Docket 98-4.

On May 28 or 29 of 2013, March informed Hallas that Black Hills was stocking five MAC trailers within Siouxland's AOR. Docket 95 at 3. Hallas then contacted Mike Rush, Vice President of NATT, and in response to March's complaint, agreed to amend the dealer agreement between MAC and Black Hills. Docket 91 at 3. The parties dispute what Hallas and Mike Rush agreed to during that conversation. *See* Docket 91 at 3; Docket 110 at 8-9. On May 30, 2013, March sent Hallas another email stating "let me give some insight why I have trouble with Rush Companies" and then detailed several reasons March has trouble with Rush companies. Docket 98-6. The final reason stated, "Now MAC trailers are showing up in Sioux Falls." *Id.* Hallas then responded "It was made very clear to Mike Rush that he couldn't do what has happened. Mike Conny and I have talked briefly yesterday and we both feel that Black hills [sic] should be canceled for doing what they did." *Id.* And March replied stating, "Do not cancel Rush wait till his year runs out he will sue you I am sure of that, I don't want MAC hurt." *Id.*

A few days later, Hallas sent Mike Rush an addendum stating that MAC would like to issue an amended dealer agreement to Black Hills under several conditions. Docket 97-2. The conditions were: Black Hills would be permitted to sell only dump and flatbed trailers; Black Hills could only stock trailers at the Rapid City location; Black Hills would not be permitted to stock trailers in

any other location for any reason; Black Hills would not be permitted to advertise the MAC product line in any advertisement other than the Rapid City advertisements; and Black Hills could only sell out of the Rapid City location and north or south of Rapid City but not east of Rapid City. *Id.* In reference to the five restrictions, the addendum also stated, "In the event that any of this happens your dealer agreement with Mac Trailer will be cancelled. If you understand and agree with this please sign and return." *Id.* The addendum also included the amended dealer agreement dated June 3, 2013 and signed by Mike Conny. *Id.* The amended dealer agreement provided that Black Hills would forfeit its twelve-county AOR in Nebraska. *Id.*

On June 24, 2013, Hallas sent Mike Rush a letter stating, "MAC Trailer will not be able to accept any orders placed by Black Hills Truck and Trailer until the adjusted dealer agreement and addendum sheet is signed and received by MAC Trailer." Docket 93-8. On June 26, 2013, Hallas emailed Tom LaGiglio, an employee of MAC, directing him not to build any trailers for Black Hills because Hallas had not received the signed amended dealer agreement and addendum, and he did not want to sell Black Hills any more product until Black Hills signed the new agreement. Docket 98-7. On June 27, 2013, Mike Rush sent an email to Hallas and LaGiglio confirming that Black Hills had received the amended dealer agreement and addendum but that Black Hills was not going to sign the agreement and was "going to stick with the current dealer agreement." Docket 98-8. LaGiglio then emailed Hallas stating, "How do you want to handle this clown?" *Id.*

4

On July 2, 2013, Black Hills's attorney sent a letter to Hallas. The letter stated that Hallas's June 24, 2013 letter constituted an "immediate termination of the [dealer agreement] without notice and good cause, and is prohibited by South Dakota law." Docket 93-9. The letter then stated Black Hills would not agree to the new terms demanded by MAC and that the agreement must be enforced according to its original terms including allowing Black Hills to "sell tank-type trailers to customers that desire such products, or other MAC trailer models as requested by customers." *Id.* The letter then explained that if MAC would not agree, Black Hills would file a civil action. *Id.* On July 19, 2013, MAC's attorney sent a letter to Black Hills's attorney in response to the July 2, 2013 letter. Docket 93-10. The letter stated it served "as notice that MAC will not renew the Dealer Agreement for calendar year 2014, beginning January 1, 2014, and any year thereafter." *Id.*

## DISCUSSION

"One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses[.]" *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp.*, 477 U.S. at 323 ("[A] party seeking summary judgment always bears the initial responsibility of . . . demonstrat[ing] the absence of a genuine issue of material fact." (internal quotations omitted)). The moving party must inform the

court of the basis for its motion and also identify the portion of the record that shows there is no genuine issue in dispute. *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citation omitted).

Once the moving party meets its initial burden, the nonmoving party must establish "that a fact . . . is genuinely disputed" either by "citing to particular parts of materials in the record," or by "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c). "The nonmoving party may not 'rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial.' " *Mosley v. City of Northwoods*, 415 F.3d 908, 910 (8th Cir. 2005) (quoting *Krenik v. Cty. of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995)). For purposes of summary judgment, the facts and inferences drawn from those facts are "viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).[2]

This court previously determined the applicable law that applies to the claims brought by Black Hills against MAC. Docket 44. Thus, South Dakota law applies to Black Hills's cause of action for violation of SDCL § 32-6B-45, Ohio law applies to Black Hills's causes of action for breach of contract, breach

---

[2] According to local civil procedure rules, a movant's "statement of material facts will be deemed to be admitted unless controverted by the opposing party's response to the moving party's statement of material facts." D.S.D. Civ. L.R. 56.1(d).

of good faith and fair dealing, and deceit, and federal law will apply to Black

Hills's claim for violation of the Robinson-Patman Act. *Id.* at 12.

## I.  MAC's Motion to Amend its Answer

MAC moves under Federal Rule of Civil Procedure 15(a)(2) to amend its

answer. Docket 122. The proposed amended answer includes a counterclaim

against Black Hills under SDCL § 53-11-2 seeking rescission of its contract.

Docket 122-1. Under Federal Rule of Civil Procedure 15(a)(2), "the court should

freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "The Eighth

Circuit takes a 'liberal viewpoint towards leave to amend' and leave 'should

normally be granted absent good reason for a denial.' " *Libertarian Party of S.D.

v. Krebs*, 312 F.R.D. 523, 525 (D.S.D. 2016) (quoting *Popp Telcom v. Am.

Sharecom, Inc.*, 210 F.3d 928, 943 (8th Cir. 2000)). Leave to amend may be

withheld, however, if "there are compelling reasons such as undue delay, bad

faith, or dilatory motive, repeated failure to cure deficiencies by amendments

previously allowed, undue prejudice to the non-moving party, or futility of the

amendment." *Sherman v. Winco Fireworks, Inc.,* 532 F.3d 709, 715 (8th Cir.

2008). When a party moves to amend its pleadings outside the deadline

established by the court's Rule 16 scheduling order, the moving party must

show good cause. *Id.* at 716. "The primary measure of good cause is the

movant's diligence in attempting to meet the order's requirements." *Id.* (quoting

*Rahn v. Hawkins*, 464 F.3d 813, 822 (8th Cir. 2006)).

MAC has known since December 9, 2015, that South Dakota franchise laws apply. Docket 44. And MAC became aware of facts giving rise to its rescission claim in December of 2016. Docket 128 at 3. The discovery deadline was not until April 28, 2017, and the motions deadline was not until May 31, 2017. Docket 63. But MAC waited until July 18, 2017 to move to amend its answer—eight months after learning of facts giving rise to the claim and after the discovery and motions deadlines had passed. Thus, the court finds that MAC engaged in undue delay and as a result has not shown good cause to amend its answer. Additionally, the court finds that granting MAC's motion to amend would cause undue delay and prejudice to Black Hills because the discovery and motions deadlines have both passed. Thus, MAC's motion to amend its answer is denied.

Also, MAC argues that it is entitled to summary judgment because mistake of law is a complete defense to Black Hills's claim under SDCL § 32-6B-45. Rule 8(c) of the Federal Rules of Civil Procedure requires a party to affirmatively set forth certain defenses and "any other matter constituting an avoidance or affirmative defense." Fed. R. Civ. P. 8(c). Generally speaking, "an avoidance or affirmative defense" encompasses defenses that admit the allegations in the complaint but suggest that there is some other reason why there should be no recovery. *See* 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1271 (3d. 1998). Under South Dakota law, mistake of law under SDCL § 32-6B-45 allows for rescission of a contract even where a party breached the contract, and thus, is an affirmative defense.

Failure to plead an affirmative defense results in the waiver of that defense. 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1278. Because the court denies MAC's motion to amend its answer, MAC is also not entitled to summary judgment on Black Hills's claim under SDCL § 32-6B for mistake of law because MAC waived that defense.

## II.    Black Hills's Claim Under SDCL § 32-6B

Both MAC and Black Hills move for summary judgment on Black Hills's claim under SDCL § 32-6B. "[A]ny vehicle dealer whose business or property is injured, or is about to be injured, by any violation of §§ 32-6B-45 to 32-6B-83, inclusive, may bring a civil action to enjoin any such violation, without having to prove irreparable injury, and to recover actual damages sustained . . . ." SDCL § 32-6B-85. Under SDCL § 32-6B-45, a franchisor may not terminate or fail to renew a dealer agreement without good cause. SDCL § 32-6B-45. Good cause is defined as "failure by a vehicle dealer to substantially comply with essential and reasonable requirements imposed upon the vehicle dealer by the vehicle dealership agreement." SDCL § 32-6B-45. In addition, the statute also sets out eight subdivisions describing good cause.[3] Finally, the manufacturer

---

[3] "In addition, good cause exists if:

(1) Without the consent of the vehicle manufacturer, the vehicle dealer has transferred an interest in the vehicle dealership, there has been a withdrawal from the dealership of an individual proprietor, partner, major shareholder, or the manager of the dealership, or there has been a substantial reduction in interest of a partner or major stockholder;

must provide the dealer with at least ninety days written notice of termination, cancellation, or nonrenewal. *Id.* And the notice "shall state all reasons constituting good cause for the action and shall provide that the dealer has sixty days in which to cure any claimed deficiency." *Id.* But the manufacturer does not have to provide notice and right to cure "if the reason for termination,

---

(2) The vehicle dealer has filed a voluntary petition in bankruptcy or has had an involuntary petition in bankruptcy filed against it which has not been discharged within thirty days after the filing, there has been a closeout or sale of a substantial part of the dealer's assets related to the vehicle business, or there has been a commencement of dissolution or liquidation of the dealer;

(3) There has been a change, without the prior written approval of the manufacturer, in the location of the dealer's principal place of business under the dealership agreement;

(4) The vehicle dealer has defaulted under a security agreement between the dealer and the vehicle manufacturer or there has been a revocation or discontinuance of a guarantee of the dealer's present or future obligations to the vehicle manufacturer;

(5) The vehicle dealer has failed to operate in the normal course of business for seven consecutive days or has otherwise abandoned the business;

(6) The vehicle dealer has pleaded guilty to or has been convicted of a felony affecting the relationship between the dealer and the manufacturer;

(7) The dealer has engaged in conduct which is injurious or detrimental to the dealer's customers or to the public welfare; or

(8) The vehicle dealer, after receiving notice from the manufacturer of its requirements for reasonable market penetration based on the manufacturer's experience in other comparable marketing areas, consistently fails to meet the manufacturer's market penetration requirements.

SDCL § 32-6B-45.

cancellation, or nonrenewal is for any reason set forth in subdivisions (1) to (7)." *Id.*

### A. Whether MAC had Good Cause to Terminate or Non-Renew Black Hills's Dealer Agreement and Provided Black Hills with the Required Opportunity to Cure

Black Hills and MAC differ on their interpretations of what SDCL § 32-6B-45 requires. "Statutory interpretation and application are questions of law." *Lewis & Clark Rural Water Sys., Inc. v. Seeba*, 709 N.W.2d 824, 830 (S.D. 2006) (quoting *Block v. Drake*, 681 N.W.2d 460, 463 (S.D. 2004)). The court looks to the plain language of the statute "to discover the true intent of the legislature." *Id.* (quoting *Sanford v. Sanford*, 694 N.W.2d 283, 287 (S.D. 2005)). Under SDCL § 32-6B-45, a manufacturer will provide a dealer with ninety-day written notice of termination or nonrenewal of the dealer agreement. "The notice shall state all reasons constituting good cause for the action and shall provide that the dealer has sixty days in which to cure any claimed deficiency." *Id.* But the notice and right to cure provision does not apply if the reason for termination or nonrenewal is for any reason set forth in subdivisions (1)-(7). *Id.*

MAC contends that it complied with the statute because its letter providing notice was sent on July 19, 2013, and the agreement did not end until December 31, 2013, so it provided Black Hills with ninety-day written notice. Docket 106 at 11-12. MAC also contends that it did not need to provide Black Hills with notice of its opportunity to cure until October 2, 2013—sixty days prior to December 31, 2013. *Id.* at 11. But that is not what the plain

language of the statute requires. The statute clearly states that a manufacturer must give the dealer ninety-day written notice of the termination, and "[t]he notice shall state all reasons constituting good cause for the action and shall provide that the dealer has sixty days in which to cure any claimed deficiency." SDCL § 32-6B-45. The court finds that the plain language of the statute requires a ninety-day written notice and that *the same notice* must include the reasons for the action and sixty days to cure. It does not allow for the manufacturer to give the dealer ninety-day notice with no explanation of the reasons for the action and then send a second notice several months later informing the dealer of the claimed deficiencies and its right to cure. The only exception to this requirement is if the reason for termination is one of the reasons listed in subdivisions (1)-(7). It is undisputed that MAC failed to inform Black Hills of its reasons for nonrenewal and of Black Hills's right to cure in MAC's July 19, 2013 letter. *See* Docket 93-10. Thus, in order for MAC to avoid liability, the question becomes whether there is a genuine issue of material fact that MAC had good cause, as defined in subsections (1)-(7), to non-renew its agreement with Black Hills.

MAC also argues that it was not required to provide Black Hills with an opportunity to cure because Black Hills sued MAC before MAC was required to provide notice of Black Hills's opportunity to cure—October 2, 2013—and because such notice would have been futile. Docket 106 at 11. First, this court has already addressed that MAC was required to provide Black Hills with notice of its opportunity to cure in its July 19, 2013 letter of nonrenewal. Thus,

12

that argument fails. Second, MAC argues that providing notice of an opportunity to cure would have been futile because "[b]y the time MAC was required to provide written notice of an opportunity to cure—October 2, 2013—[Black Hills] had already abandoned the Dealer Agreement by filing suit against MAC." *Id.* at 13. Black Hills filed suit against MAC in September of 2013, several months after MAC was required to provide Black Hills notice of its opportunity to cure. Also, Black Hills informed MAC on two occasions shortly before July 19, 2013, that it intended to abide by the original dealer agreement. On June 27, 2013, Mike Rush emailed Hallas and LaGiglio that Black Hills intended to "stick with the current dealer agreement," and on July 2, 2013, Black Hills's attorney sent a letter to MAC demanding that the terms of the original dealer agreement be enforced. Docket 98-8; Docket 93-9. Thus, in July of 2013, Black Hills had not abandoned the original dealer agreement and it would not have been futile for MAC to provide Black Hills with its opportunity to cure in its July 19, 2013 letter of nonrenewal.

MAC alleges that there were several reasons, amounting to good cause, to non-renew Black Hills as a dealer. Docket 106 at 10. For example, MAC was informed that Black Hills stocked MAC trailers in another dealer's AOR. And when MAC addressed the issue with Black Hills and came to a verbal agreement, Black Hills reneged on the verbal agreement and threatened to sue MAC. *Id.* MAC alleges that Black Hills did not become educated about MAC products, did not promote MAC products, did not attend MAC training, did not respond to MAC's inquiries, and did not maintain an adequate sales volume.

*Id.* In its brief, MAC only applies these reasons to the general definition of good cause included in SDCL § 32-6B-45 and does not address whether they apply to the definition of good cause as defined in subdivisions (1)-(7). The court finds that, even if MAC's stated reasons for terminating Black Hills were true, they do not amount to good cause as defined in subdivisions (1)-(7). Thus, because MAC's notice did not state all the reasons constituting good cause for the termination and did not give Black Hills sixty days to cure the claimed deficiencies, there is no question of fact for the jury and Black Hills is entitled to partial summary judgment on its claim under SDCL § 32-6B-85.

### B. Whether Black Hills was Damaged by MAC's Termination or Non-Renewal of the Dealer Agreement

MAC moves for summary judgment on Black Hills's claim under SDCL § 32-6B-85 alleging that there is no evidence that Black Hills sustained any damage from the non-renewal or termination of the dealer agreement. "Under any damage model, 'there need only be a reasonable basis for measuring the loss and it is only necessary that damages can be measured with reasonable certainty.' " *Smith v. Highmore Farm Ltd. P'ship*, 489 N.W.2d 908, 912 (S.D.1992) (quoting *Tri-State Refining and Inv. Co. v. Apaloosa Co.*, 452 N.W.2d 104, 110 (S.D. 1990)). "Difficulty in computing damages ought not to be confused with the requirement of proving damages as an essential element for recovery. *McKie v. Huntley*, 620 N.W.2d 599, 604 (S.D. 2000). "Proof of damages requires a reasonable relationship between the method used to calculate damages and the amount claimed." *Id.* at 603. "Where doubt

exists as to certainty of damages, those doubts should be resolved against the wrongdoer." *Smith*, 489 N.W.2d at 912 (quoting *Tri-State Refining and Inv. Co.*, 452 N.W.2d at 110).

In *O'Brien v. R-J Development Co.*, 387 N.W.2d 521 (S.D. 1986), the South Dakota Supreme Court found that the plaintiff's alleged lost profits were too speculative and upheld the trial court's decision not to award damages. *O'Brien v. R-J Dev. Co.*, 387 N.W.2d 521, 528 (S.D. 1986). In October of 1983, plaintiffs and defendant entered into an agreement for plaintiffs to purchase 22 lots in a subdivision east of Rapid City. *Id.* The parties signed the agreement and plaintiffs deposited earnest money and arranged financing. *Id.* at 524. But a few months later, defendant informed plaintiffs that she would not sell to them. *Id.* The trial court found that the parties had entered into a valid agreement but determined that neither party sustained any damages and the South Dakota Supreme Court agreed. *Id.* Plaintiffs argued that they should be "awarded the loss of the profits they could have made during the 1984 selling season." *Id.* at 528. But the Court found that "no lots had been sold in [the subdivision] since 1981, and evidence pertaining to lost profits was based upon projected potential sales which did not rise above speculation and uncertainty." *Id.*

In *Smith v. Highmore Farm Ltd. Partnership*, 489 N.W.2d 908, 912 (S.D. 1992), the South Dakota Supreme Court found that plaintiff's claimed damages were not speculative and could be presented to the jury. In *Smith*, plaintiff

alleged that defendant breached the parties' lease agreement when defendant failed to terminate the agreement with a written notification. *Id.* at 910. The defendant argued that because the plaintiff "was the only person to testify as to damages and failed to produce any farm records to verify his damage estimates, the evidence on damages was speculative." *Id.* at 912. The Court found that the defendant's actions caused plaintiff to suffer damages because plaintiff was unable to farm the tracts of land. *Id.* Thus, "any uncertainty caused by absence of farm records or expert agricultural witnesses only [went] to the amount of damages." *Id.* Plaintiff "presented evidence of anticipated expenses and profits" based on the past years he had farmed the tracts of land, county crop averages, and personal experience, which was enough evidence to submit the question to the jury. *Id.*

Here, Black Hills is prepared to introduce expert testimony as to its lost profits and its expert's testimony is based on financials, market data, tax, returns, and invoices. Docket 86-3. Also, in contrast to the facts in *O'Brien*, Black Hills sold eleven[4] MAC trailers during the nine-month period leading up to the July 19, 2013 nonrenewal letter. Docket 95 at 5. Black Hills also generated revenue from parts sales and service work. Docket 86-3. Thus, Black Hills has presented enough evidence to form a reasonable basis for measuring the loss. In conclusion, MAC's Motion for Summary Judgement (Docket 90) as

---

[4] MAC states that Black Hills only sold ten MAC trailers as a dealer and was given special permission to sell one tank trailer outside the scope of the dealer agreement. Docket 107 at 3.

the to Black Hills's claim under SDCL § 32-6B-45 is denied because Black Hills's alleged damages are not speculative.

## III.  Black Hills's Claim Under the Robinson-Patman Act

MAC moves for summary judgment on Black Hills's claim under the Robinson-Patman Act because there is no evidence that MAC discriminated in price between Black Hills and another purchaser. Docket 92 at 10. The Robinson-Patman Act states:

> It shall be unlawful for any person engaged in commerce, in the course of such commerce, either directly or indirectly, to discriminate in price between different purchasers of commodities of like grade and quality, where either or any of the purchases involved in such discrimination are in commerce, where such commodities are sold for use, consumption, or resale within the United States . . . and where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce, or to injure, destroy, or prevent competition with any person who either grants or knowingly receives the benefit of such discrimination, or with customers of either of them.

15 U.S.C. § 13(a).

The Supreme Court has described three categories of competitive injury that may give rise to a Robinson-Patman claim—primary line, secondary line, and tertiary line. *Volvo Trucks N. Am., Inc. v. Reeder-Simco GMC, Inc.*, 546 U.S. 164, 176 (2006). Black Hills alleges secondary line discrimination which involves "price discrimination that injures competition among the discriminating seller's customers." *Id.* To establish secondary line injury, Black Hills has to show (1) that the relevant sales were made in interstate commerce, (2) the commodities were of like grade and quality, (3) the defendant

17

discriminated in price between the plaintiff and another purchaser of the commodity, and (4) the effect of such discrimination was to injure, destroy, or prevent competition to the advantage of a favored purchaser. *Id.* at 176-77.

Black Hills alleges that MAC violated the Robinson-Patman Act when it attempted to convince Black Hills to restrict its sales area, imposed allegedly restrictive rules, and gave Siouxland the Nebraska AOR previously held by Black Hills after the termination of the dealer agreement. Docket 112 at 6-7. None of these instances, even if true, fit the definition of price discrimination in the Robinson-Patman Act. To show price discrimination, Black Hills would have to allege that MAC sold trailers of similar quality to Siouxland at a lower price than it sold similar trailers to Black Hills.

Here, Black Hills does not make any allegation related to price discrimination. Instead, the allegations are focused on MAC's attempt to renegotiate the terms of the dealer agreement, and MAC's eventual decision to grant Siouxland the Nebraska AOR after the dealer agreement was terminated. These allegations do not relate to price discrimination and do not present an issue of fact for the jury to decide.

## IV.    **Black Hills's State-Law Claims**

MAC argues that Black Hills's state-law claims are preempted by SDCL § 32-6B because it is a detailed and comprehensive piece of regulation that indicates the legislature's intent to design a complete scheme for the nonrenewal of a dealer agreement. Docket 92 at 13. In support of its argument,

MAC relies on the decisions in *Hohm v. City of Rapid City*, 753 N.W.2d 895 (S.D. 2008) and *City of Lemmon v. U.S. Fidelity & Guaranty Co.*, 293 N.W.2d 433 (S.D. 1980).

In *Hohm*, the South Dakota Supreme Court found that the common-law duty previously imposed on cities to construct and maintain its streets in a reasonably safe manner was extinguished by the enactment of statutes regulating the duty of cities, towns, counties, and townships. *Hohm*, 753 N.W.2d at 898. Prior to the enactment of the statutes, the common law imposed a duty on municipalities "to keep, repair or maintain streets and sidewalks in a reasonably safe condition for public travel." *Id.* at 899. In contrast, the duties imposed on counties and townships as to highway maintenance were statutory. *Id.* at 900. Then, the state legislature enacted a statute that imposed a statutory liability for negligence in highway maintenance for counties, townships, cities, and towns. *Id.* at 902. The South Dakota Supreme Court found that the statute abrogated the previous common law because the common-law duty required that roads be in a "reasonably safe condition" and the statutory duty imposed a negligence standard, which were different standards. *Id.* at 903. Thus, the statutory duty abrogated the common-law duty under SDCL § 1-1-24 because the common law conflicted "with the will of the sovereign power." *Id.* (quoting SDCL § 1-1-24).

In *City of Lemmon*, the South Dakota Supreme Court also found that the common law was abrogated by a statute where the common law and statute

directly conflicted. *City of Lemmon*, 293 N.W.2d at 439. The statute at issue prohibited "a suit by a surety against those other than the principal despite any benefit that may accrue to the third parties." *Id.* The common law would have allowed the surety to file suit against other parties besides the principal. *Id.* In its decision the Court stated "that by holding that [the surety] could sue directly against [parties other than the principal] we would be rendering SDCL 56-2-14 a complete nullity." *Id.*

Permitting Black Hills to bring claims for breach of contract, breach of good faith and fair dealing, and deceit does not directly conflict with the provisions in SDCL § 32-6B and would not render SDCL § 32-6B a nullity. SDCL § 32-6B sets out numerous rules and regulations governing the relationship between manufacturers and dealers, but it does not supplant a contract between the parties. Unlike the scenarios in *Hohm* and *City of Lemmon*, where the statute and common law could not be reconciled, a manufacturer could violate SDCL § 32-6B without breaching the contract, and vice versa. Thus, the enforcement of one does not nullify the other.

### A.    Black Hills's Claim for Breach of Contract

MAC alleges that Black Hills has failed to produce evidence that MAC breached any term of the dealer agreement. Docket 92 at 16. Under Ohio law, the elements of a breach of contract claim are: (1) the existence of a binding contract; (2) performance by non-breaching party; (3) the other party's failure to perform its obligations; and (4) damages to the non-breaching party

resulting from the breach. *Discover Bank v. Swartz*, 51 N.E.3d 694, 699 (Ohio Ct. App. 2016).

Black Hills sets forth several alleged breaches by MAC[5] and appears to argue that MAC's act of sending Black Hills the proposed amended dealer agreement was an anticipatory breach of the September 26, 2012 dealer agreement. Docket 112 at 10. "[A]n anticipatory breach of contract must be an unequivocal repudiation of the contract." *Sunesis Trucking Co., Inc., v. Thistledown Racetrack*, LLC, 22 N.E.3d 190, 196 (Ohio Ct. App. 2014). "A mere request for a change in terms or for cancellation does not constitute a repudiation." *Id.* (quoting *McDonald v. Bedford Datsun*, 570 N.E.2d 299, 300 (Ohio Ct. App. 1989)). A mere request for modification or proposed addendum to a contract is a negotiation and is not a breach. *Id.* at 196-97. But a demand for different contract terms paired with a refusal to perform until the demand is met is an anticipatory breach. *Id.* There is not an anticipatory breach of the contract where the defendant continued to perform under the existing contract while attempting to negotiate a higher payment. *Id.* at 197.

Here, on June 24, 2013, Hallas sent a letter to Black Hills stating that it would not accept orders placed by Black Hills until Black Hills signed the

---

[5] In Black Hills's brief, it lays out a chart indicating the terms of the contract that MAC allegedly breached. Docket 112 at 10-12. Several of the alleged breaches take issue with the fact that the proposed amended agreement differed from the original dealer agreement. For example, Black Hills states that the adjusted dealer agreement only allowed Black Hills to sell dump and flatbed trailers, but MAC previously allowed Black Hills to sell a tank trailer and that MAC's attempt to exclude tank trailers in the adjusted agreement is a breach.

amended dealer agreement and addendum sheet. Docket 97-3. On June 26, 2013, Hallas sent an email to LaGiglio directing him not to build any trailers for Black Hills until the new dealer agreement and addendum sheet was signed. Docket 98-7. On June 27, 2013, Mike Rush informed Hallas that Black Hills did not want to sign the amended dealer agreement and intended to "stick with the current dealer agreement." Docket 98-8. Section 6 of the dealer agreement states, "Distributor shall place orders with Manufacturer per the terms and procedures satisfactory to Manufacturer, and no order of Distributor shall be binding upon Manufacturer until said order has been reviewed and accepted, in writing, by Manufacturer." Docket 97-1 at 1. Section 7 states, "Manufacturer will exercise its best efforts to fill all orders received from Distributor in a timely manner . . . ." *Id.* at 2. Thus, viewing the evidence in the light most favorable to the non-moving party, Black Hills, there is a question of fact whether MAC stopped performance of the dealer agreement until Black Hills signed the adjusted agreement, which would be an anticipatory breach of the contract.

MAC argues that Black Hills has not presented any evidence that MAC actually followed through with its threat and stopped performing under the dealer agreement and points to MAC's July 19, 2013 letter where it stated, "Absent Black Hills executing a new dealer agreement, MAC intends to honor the terms of the Dealer Agreement up to and including December 31, 2013." Docket 98-9. But this letter came after MAC had indicated to Black Hills that it would stop performing under the original contract until the new agreement was

signed. MAC also argues that Black Hills's alleged damages are speculative. Docket 92 at 15. As this court addressed above, Black Hill's alleged damages resulting from the nonrenewal of the dealer agreement are not speculative and present a question for the jury.

**B.    Black Hills's Claim for Breach of Duty of Good Faith and Fair Dealing**

Black Hills alleges a claim for breach of good faith and fair dealing against MAC. In Ohio, "[t]here is no separate tort cause of action for breach of good faith that is separate from a breach of contract claim." *Ne. Ohio Coll. of Massotherapy v. Burek*, 759 N.E.2d 869, 875 (Ohio Ct. App. 2001) (citing to *Lakota Local Sch. Dist. v. Brickner*, 671 N.E.2d 578, 584 (Ohio Ct. App. 1996). Thus, MAC is entitled to summary judgment on Black Hills's cause of action for breach of good faith and fair dealing as a matter of law.

**C.    Black Hills's Claim for Deceit**

MAC argues that Black Hills's cause of action for deceit fails because Black Hills does not identify any deceptive acts that MAC engaged in. Docket 92 at 23. Under Ohio law, the elements of deceit are: (1) an actual or implied representation or concealment of a matter of fact, which relates to the present or past and is material to the transaction; (2) the representation was false; (3) the representation was made with knowledge of its falsity, or with utter disregard and recklessness as to its truth; (4) the representation was made with the intent of misleading Black Hills into relying upon it; (5) Black Hills relied upon the representation with a right to so rely; and (6) injury resulted as

a consequence of the reliance. *Henry v. Reich*, 72 N.E.2d 500, 502 (Ohio Ct. App. 1947). "[T]he misrepresentation must be of a fact existing when the misrepresentation was made." *Janiszewski v. Belmont Career Ctr.*, No. 16 BE 0009, 2017 WL 944023, at *16 (Ohio Ct. App. Mar. 9, 2017). But an exception to the future promise rule occurs "where an individual makes a promise concerning a future action, occurrence, or conduct and, at the time he makes it, has no intention of keeping the promise." *Id.* (quoting *Williams v. Edwards*, 717 N.E.2d 368, 374 (Ohio Ct. App. 1998)).

Here, Black Hills alleges three deceptive acts in its Amended Complaint and two alleged deceptive acts in its brief. Docket 46 at 9; Docket 112 at 17-18. First, that MAC promised, without any intention of following through on its promise, it would allow Black Hills to sell MAC products in the Nebraska AOR throughout the duration of the dealer agreement. *Id.* Black Hills does not provide any further argument or evidence on this allegation. But the undisputed evidence shows that Black Hills was permitted, as part of the original dealer agreement, to sell trailers in the Nebraska AOR up until the time that the agreement ended. The circumstances under which the agreement ended are disputed in the SDCL § 32-6B statutory claim and the breach of contract claim, but Black Hills was permitted to sell MAC product in the Nebraska AOR until the agreement ended. Thus, there is no evidence to support this allegation.

Second, Black Hills alleges that MAC refused to take Black Hills's product orders unless Black Hills agreed to the adjusted dealer agreement, and third, that MAC refused to comply with South Dakota statutory requirements unless Black Hills agreed to the adjusted dealer agreement. *Id.* Neither of these allegations are a false representation of fact or a promise to do something in the future. Both are simply actions that MAC took. Thus, they do not satisfy the elements of deceit.

Finally, Black Hills further alleges for the first time in its brief that MAC verbally promised Black Hills that Black Hills would be permitted to sell tank trailers, and that Black Hills could build an MAC dealership in the Omaha region. Docket 112 at 17-18. These alleged deceptive acts were not pled in Black Hills's Amended Complaint. "In alleging fraud or mistake, a party must state with particularity the circumstnces constituting fraud or mistake." Fed. R. Civ. P. 9(b). The Federal Rules "do not entitle parties to manufacture claims, which were not pled, late into the litigation for the purpose of avoiding summary judgment." *Rodgers v. City of Des Moines*, 435 F.3d 904, 910 (8th Cir. 2006) (quoting *N. States Power Co. v. Fed. Transit Admin.*, 358 F.3d 1050, 1057 (8th Cir. 2004)). Thus, the court will not address the allegations in Black Hills's responsive brief, and MAC is entitled to summary judgment on Black Hills's cause of action for deceit.

### D. Black Hills's Claim for Punitive Damages

Because the court grants MAC's motion for summary judgment on Black Hills's causes of action for breach of good faith and fair dealing, deceit, and price discrimination under the Robinson-Patman Act, Black Hills's remaining claims are a violation of SDCL § 32-6B-45 and breach of contract. Under SDCL § 32-6B-85, Black Hills is entitled "to recover actual damages sustained, together with costs, disbursements, and reasonable attorney fees." SDCL § 32-6B-85. In Ohio, punitive damages are not recoverable for a breach of contract even if the breach is willful or malicious. *Atsco Holdings Corp. v. Air Tool Service Co.*, No. 1:15 CV 1586, 2016 WL 3078902, at *1-2 (N.D. Ohio June 1, 2016). Thus, MAC is entitled to summary judgment on Black Hills's claim for punitive damages.

### CONCLUSION

It is ORDERED that

1.  MAC's Motion for Summary Judgment (Docket 90) is GRANTED in part and DENIED in part;
2. Black Hills's Motion for Partial Summary Judgment (Docket 94) is GRANTED; and
3. MAC's Motion to Amend (Docket 122) is DENIED.

Dated September 22, 2017.

BY THE COURT:

*/s/Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE